1

2

3

4

5

6

UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT SEATTLE

7

8

DOUGLAS MUNDLE and PAMELA
KNIGHT, individually and on behalf
of all persons similarly situated,

9

Plaintiffs,

10

v.

11

12

13

DOXO, INC., a corporation; STEVEN
SHIVERS, individually and as an
officer of DOXO, Inc.; and ROGER
PARKS, individually and as an officer
of DOXO, Inc.,

14

Defendants.

C24-0893 TSZ

ORDER

15

16

17

18

   THIS MATTER comes before the Court on Defendants Doxo, Inc., Steven

Shivers, and Roger Parks' (collectively, "Defendants") Motion to Dismiss, docket no. 27.

Having reviewed all papers filed in support of, and in opposition to, the motion, the Court

enters the following order.

19

**Background**

20

21

22

   Defendant Doxo is a Washington corporation that has advertised and sold bill

payment services to consumers throughout the United States.  Am. Compl. at ¶ 23

(docket no. 25).  Defendant Shivers is the Chief Executive Officer and a cofounder of

23

1    Doxo.  Id. at ¶ 24.  Defendant Parks is the Vice President of business development and a

2    cofounder of Doxo.  Id. at ¶ 25.

3        Plaintiff Douglas Mundle initiated this class action lawsuit in June 2024.  See

4    Compl. at pp. 1, 31 (docket no. 1).  Plaintiffs Mundle and Pamela Knight filed their

5    Amended Complaint in September 2024.  See Am. Compl. at pp. 1, 40 (docket no. 25).

6    In their Amended Complaint, Plaintiffs alleged that Defendants engaged and continue to

7    engage in unfair and deceptive acts and practices in violation of the Washington

8    Consumer Protection Act ("CPA"), RCW Chapter 19.86, (Count 1); Defendants received

9    and retained unjust benefits from Plaintiffs and class members for unwanted fees and

10   unwanted paid subscription plans that were obtained due to Defendants' deceptive and

11   unjust practices, which constitutes unjust enrichment (Count 2); and Plaintiffs are entitled

12   to declaratory relief under the Declaratory Judgment Act, 28 U.S.C. § 2201 (Count 3).

13   See id. at ¶¶ 98–106, 108–14, 116–21.

14   **A.    Allegations in *FTC v. Doxo***

15       In describing Defendants' alleged violative actions, Plaintiffs cite to significant

16   portions of the Federal Trade Commission's (the "FTC") Amended Complaint filed

17   under Case No. 24-0569.  See Am. Compl. at ¶¶ 31–82 (docket no. 25).  In that case, the

18   Court entered an Order denying Doxo and Parks' motion to dismiss.  See FTC v. Doxo,

19   Inc., 2025 WL 887311, at *12 (W.D. Wash. Mar. 21, 2025).  In that Order, the Court

20   provided a detailed summary of the allegations contained in the FTC's Complaint.  See

21   id. at *1–5.  Rather than summarize those same allegations here, the Court incorporates

22   the portion of that Order herein to the extent Plaintiffs assert similar allegations in their

23

ORDER - 2

1    Amended Complaint.[1]  However, the Court summarizes the allegations of the individual

2    Plaintiffs in the two subsections that follow.

3    **B.      Allegations specific to Mundle**

4         Mundle is a resident of Connecticut.  Am. Compl. at ¶ 5.  In or around 2019,

5    Mundle sought to pay a medical bill but could not identify his doctor's website on the

6    paper bill he received.  Id. at ¶ 6.  He searched for his doctor's online payment portal by

7    entering the doctor's name into a search engine.  Id.  The first line of the search result

8    appeared to be the doctor's website as it had his name and the logo matched the logo and

9    branding on Mundle's paper bill.  Id.  Unknown to Mundle, he had been directed to

10    Doxo's website, "which he believed was the authorized online payment site of his

11    doctor."  Id.  Mundle navigated through Doxo's payment process and paid a requested

12    service charge, believing such payment to be required by his doctor's authorized payment

13    platform.  Id.  Had Doxo disclosed that it was not the authorized payment platform for his

14    doctor, Mundle "would have continued searching for the authorized payment website."

15    Id.  Additionally, had Mundle known that paying his bill through Doxo would not result

16    in an immediate payment but instead cause Doxo to mail a check to his doctor's office,

17    Mundle would have simply mailed the check himself and avoided the service fee that

18    Doxo charged him.  Id.

19         In or around 2021, Mundle sought to pay a toll charge for the New York State

20    Thruway.  Id. at ¶ 7.  He conducted a Google search for the payment platform, and the

21

22    _____

[1] Although the FTC alleges various federal claims in its complaint and the claims here are based solely on state law, there is a general overlap of allegations between the two cases.  The parties are familiar with the FTC case.

23

ORDER - 3

1   top line result showed a link identified as the NY State Thruway and included the NY

2   State Thruway logo.  Id.  Mundle clicked the link, again navigating to Doxo's website.

3   Id.  Mundle claims that nowhere on Doxo's website "was there any indication that the

4   payment portal was not authorized or controlled by the NY State Thruway."  Id.  At the

5   end of the payment process, Mundle paid a service fee he believed he was required to pay

6   to effectuate payment of his bill.  Id.  Had Mundle known that paying his bill through

7   Doxo would not result in an immediate payment but instead cause Doxo to mail a check

8   to NY State Thruway, Mundle would have simply mailed the check himself and avoided

9   the service fee that Doxo charged him.  Id.

10          In May 2024, Mundle received a bill from his orthopedic surgeon, CT

11  Orthopedics, that he sought to pay online.  Id. at ¶ 8.  After using Google to search for

12  CT's online payment website, Mundle again navigated to Doxo's website, which

13  displayed CT's name and logo.  Id.  Nowhere on the website was there any indication that

14  it was not the authorized payment website for CT.  Id.  Only after Mundle had entered his

15  information "through several screens was he presented with a $3.95 service fee in

16  addition to the amount of his bill."  Id.  Mundle paid the fee because he had already

17  entered all his information, did not know if there was another way for him to pay without

18  the service charge, and believed paying the fee would result in an immediate payment to

19  his doctor to be credited against his account.  Id.  Mundle called his doctor's office the

20  following day and was told that the office had no agreement with Doxo, did not authorize

21  Doxo to manage its bill payments, and that the doctor's office had its own payment portal

22  through which Mundle could have paid his bill without any added service fee.  Id.  Had

23  Mundle known that Doxo's website was not his doctor's authorized payment portal he

1  would have attempted to find the authorized payment platform and avoided paying

2  Doxo's service fee.  Id.

3  **C.    Allegations specific to Knight**

4          Knight is a resident of Missouri.  Am. Compl. at ⁋ 9.  In the fall of 2023, Knight

5  began purchasing several items from Seventh Avenue, a merchant that offers mail order

6  retail sales of a variety of home-related products.  Id. at ⁋ 10.  Knight placed her orders

7  over the telephone and has no recollection of browsing Seventh Avenue's website or

8  attempting to make these purchases online.  Id. at ⁋ 11.  Knight paid using her debit card,

9  which is associated with her individual checking account.  Id. at ⁋ 12.  Knight buys from

10  Seventh Avenue in part because she can make monthly payments on her orders instead of

11  paying the entire purchase price upfront.  Id. at ⁋ 13.  As of September 2024, this monthly

12  payment is $35.  Id.

13          In September 2024, Knight checked her bank statements and saw a $5.99 charge

14  she did not recognize listed as "DOX*BILL PA."  Id. at ⁋ 14.  The charge was dated for

15  the same date as her $35 monthly Seventh Avenue payment.  Id.  A Seventh Avenue

16  representative who Knight spoke with did not know why there was a $5.99 charge.  Id. at

17  ⁋ 15.  After searching online for answers, Knight "gathered that the $5.99 charge was

18  from Doxo, a company of which she had never heard."  Id. at ⁋ 16.  Knight checked her

19  bank statements again and was "shocked" to see charges from Doxo since February 2024

20  totaling $192.92.  See id. at ⁋ 17.  Nowhere on Seventh Avenue's website is there any

21  mention of Doxo or that a third party is paying any amount to Seventh Avenue on

22  Knight's behalf, much less signing her up for additional fees and subscriptions.  Id. at

23  ⁋ 18.

1    Knight contacted Doxo's customer service line.  Id. at ¶ 19.  A Doxo

2    representative informed her that she had signed up for a Doxo account and the charges on

3    her bank statement related to bills from Seventh Avenue in which Doxo had processed

4    payments on Knight's behalf.  Id.  Knight states she had no recollection of ever signing

5    up for such an account, always paid Seventh Avenue directly using her debit card, and

6    did not consent to her bills being paid through Doxo.  Id.  Knight immediately requested

7    that the representative cancel her Doxo account and to her knowledge the account is now

8    closed.  Id.

9    **Discussion**

10   **A.      Standard of Review**

11       Although a complaint challenged by a Federal Rule of Civil Procedure 12(b)(6)

12   motion to dismiss need not provide detailed factual allegations, it must offer "more than

13   labels and conclusions" and contain more than a "formulaic recitation of the elements of

14   a cause of action."  Bell Atl. Corp. v. Twombly, 550 U.S. 544, 555 (2007).  The

15   complaint must indicate more than mere speculation of a right to relief.  Id.  When a

16   complaint fails to adequately state a claim, such deficiency should be "exposed at the

17   point of minimum expenditure of time and money by the parties and the court."  Id. at

18   558.  A complaint may be lacking for one of two reasons: (i) absence of a cognizable

19   legal theory, or (ii) insufficient facts under a cognizable legal claim.  Robertson v. Dean

20   Witter Reynolds, Inc., 749 F.2d 530, 534 (9th Cir. 1984).  In ruling on a motion to

21   dismiss, the Court must assume the truth of the plaintiff's allegations and draw all

22   reasonable inferences in the plaintiff's favor.  See Usher v. City of Los Angeles, 828 F.2d

23

ORDER - 6

1    556, 561 (9th Cir. 1987).  The question for the Court is whether the facts in the complaint

2    sufficiently state a "plausible" ground for relief.  <u>Twombly</u>, 550 U.S. at 570.

3    **B.    <u>Scope of Review</u>**

4           The Court first addresses the scope of materials to be considered.  Defendants

5    attached a declaration (the "Shivers Declaration") to their Motion to Dismiss.  <u>See</u> Decl.

6    of Steven Shivers (docket no. 28).  Attached to the Shivers Declaration are several

7    exhibits.  These exhibits include (1) a screenshot of Labcorp's landing page on Doxo's

8    website prior to Doxo's voluntary changes to its website in response to the FTC's

9    investigation, (2) a screenshot of Labcorp's "current" landing page on Doxo's website,

10   (3) a series of screenshots of all webpages in Doxo's checkout process for the biller Lake

11   Panasoffkee Water Association prior to Doxo's voluntary changes to its website in

12   response to the FTC's investigation, (4) a series of screenshots of all "current" webpages

13   in Doxo's checkout process for the biller Lake Panasoffkee Water Association, (5) a copy

14   of Doxo's Terms of Service, effective October 20, 2014, (6) a copy of Doxo's Terms of

15   Service, effective April 19, 2019, (7) a copy of Doxo's Terms of Service, effective April

16   1, 2020, (8) a copy of Doxo's Terms of Service, effective June 13, 2022, (9) a copy of

17   Doxo's Terms of Service, effective May 6, 2024, and (10) a copy of Doxo's Terms of

18   Service, effective May 9, 2024.  Shivers Decl. at 2–5 (docket no. 28); <u>see</u> Exs. A–J to

19   Shiver Decl. (docket no. 15 at 6–82).  Most of these exhibits are similar to—if not the

20   same as—those that Defendants had previously asked the Court to incorporate by

21   reference or judicially notice in the <u>FTC</u> case.  <u>See</u> <u>FTC</u>, 2025 WL 887311, at *6.

22   Defendants do so again here.  <u>See</u> Mot. at 5–6 (docket no. 27); Reply at 3–4 (docket no.

23   32).  Plaintiffs argue that Defendants' reliance on the Shivers Declaration is improper

ORDER - 7

1  under both judicial notice and the incorporation by reference doctrine. Opp. at 29–31

2  (docket no. 30).

3         Plaintiffs are correct that the example screenshots attached to the Shivers

4  Declaration do not represent the payment process Plaintiff Mundle navigated because the

5  billers are different. But Defendants did not offer them to provide context only as to

6  Mundle's allegations. The screenshots are relevant to demonstrate the general process

7  that consumers, such as this case's potential class members, engaged in when paying

8  their bills through Doxo's website. Additionally, Plaintiffs have not asserted how

9  different, if at all, the screenshots included are compared to the webpages Mundle

10  viewed.

11         Accordingly, the Court concludes that it is appropriate to incorporate by reference

12  the webpages identified in Exhibits A–D and the different versions of the "doxo User

13  Terms of Service" terms identified in Exhibits E–J attached to the Shivers Declaration.

14  See CMRE Fin. Servs. Inc. v. Doxo Inc., 2022 WL 16701259, *4 (W.D. Wash. Oct. 7,

15  2022) (considering all aspects of Doxo's bill payment platform because the platform's

16  allegedly deceptive nature formed the basis of the plaintiffs' lawsuit); FTC, 2025 WL

17  887311, at *6.

18  **C.    Washington Consumer Protection Act – Count 1**

19         Under Washington's CPA, unfair methods of competition and unfair or deceptive

20  acts or practices in the conduct of any trade or commerce are unlawful. RCW 19.86.020.

21  To establish a CPA claim, a plaintiff must prove five elements: (1) an unfair or deceptive

22  act or practice that (2) affects trade or commerce and (3) impacts the public interest, and

23  (4) the plaintiff sustained damage to business or property that was (5) caused by the

ORDER - 8

1  unfair or deceptive act or practice. Keodalah v. Allstate Ins. Co., 194 Wn.2d 339, 349–50

2  (2019). All five elements must be established for a CPA claim to be successful. Id. at

3  350. Defendants argue that Plaintiffs fail to establish the first and fifth elements. Mot. at

4  11, 16 (docket no. 27).

5          **1.    Plaintiffs' CPA claim against Doxo**

6          *i.     Element One: Unfair or deceptive act or practice*

7          Plaintiffs allege that Doxo engaged in unfair or deceptive acts or practices.

8  Whether a particular act or practice is "unfair or deceptive" is a question of law. Panag v.

9  Farmers Ins. Co. of Washington, 166 Wn.2d 27, 47, 204 P.3d 885 (2009). "A plaintiff

10 need not show the act in question was intended to deceive, only that it had the capacity to

11 deceive a substantial portion of the public." Young v. Toyota Motor Sales, U.S.A., 196

12 Wn.2d 310, 317, 472 P.3d 990 (2020) (quoting Panag, 166 Wn.2d at 47). Deception

13 exists "if there is a representation, omission or practice that is likely to mislead" a

14 reasonable consumer. Id. (quoting Panag, 166 Wn.2d at 50). In deciding whether an act

15 or practice is "unfair or deceptive," Washington state courts consider federal court

16 decisions that have approved or rejected administrative determinations made by the FTC

17 in administering the Federal Trade Commission Act, 15 U.S.C. §§ 41–58. Panag, 166

18 Wn.2d at 47; see RCW 19.86.920 ("It is the intent of the legislature that, in construing

19 [the CPA], the courts be guided by final decisions of the federal courts and final orders of

20 the federal trade commission interpreting the various federal statutes dealing with the

21 same or similar matters".).

22

23

1       Plaintiffs' CPA claim appears to be partially based on Defendants' alleged fraud[2];

2 they generally allege that Defendants "extracted from consumers through fraud and

3 deceit" millions of dollars "of junk fees and unwanted subscriptions" and reference the

4 alleged fraudulent conduct a few times.  Am. Compl. at ¶ 3; see id. at ¶¶ 62, 89.  When a

5 CPA claim is grounded in fraud, the allegations must satisfy the particularity requirement

6 of Federal Rule of Civil Procedure 9(b).  Carter v. Ethicon Inc., 2021 WL 1893749, at *2

7 (W.D. Wash. May 11, 2021).  Rule 9(b) requires that "[i]n alleging fraud or mistake, a

8 party must state with particularity the circumstances constituting fraud or mistake."  Fed.

9 R. Civ. P. 9(b).  "To comply with Rule 9(b), allegations of fraud must be specific enough

10 to give defendants notice of the particular misconduct which is alleged to constitute the

11 fraud charged so that they can defend against the charge and not just deny that they have

12 done anything wrong."  In re Finjan Holdings, Inc., 58 F.4th 1048, 1057 (9th Cir. 2023)

13 (quoting Bly-Magee v. California, 236 F.3d 1014, 1019 (9th Cir. 2001)).  In other words,

14 the complaint must "state the time, place, and specific content of the false representations

15 as well as the identities of the parties to the misrepresentation."  Edwards v. Marin Park,

16 Inc., 356 F.3d 1058, 1066 (9th Cir. 2004) (quoting Alan Neuman Prods., Inc. v. Albright,

17 862 F.2d 1388, 1392 (9th Cir. 1988)).

18       In Count 1, Plaintiffs allege that Doxo violated Washington's CPA by engaging in

19 the following alleged "unfair and deceptive acts and practices":

20

21

22 [2] For the purpose of resolving Defendants' Motion to Dismiss, the Court applies Rule 9(b)'s heightened pleading standard to Plaintiffs' CPA claim and concludes that the allegations satisfy that standard.  But whether Rule 9(b) does in fact apply to Plaintiffs' CPA claim, i.e., whether that claim is grounded on

23 Defendants' fraud, is best left to be resolved on a motion for summary judgment.

ORDER - 10

1. Misrepresenting that Doxo is an official payment channel, thereby misleading and deceiving consumers;
2. Misrepresenting, in connection with the advertising, marketing, promotion, or provision of Doxo's bill payment products or services, that consumers would pay the amount listed on their bill, thereby misleading and deceiving consumers;
3. Deceptively failing to clearly disclose material terms or to procure consent before charging a consumer's credit card, debit card, bank account, or other financial account for Doxo bill payment products or services, including Doxo's paid subscription plans;
4. Charging consumers for fees and subscription plans without their knowledge or consent;
5. Misstating, omitting or concealing other material facts concerning Doxo's products and services, thereby further misleading and deceiving Doxo consumers;
6. Continuing to take steps to collect payments from Plaintiffs and Class Members notwithstanding the above; and
7. Developing, implementing, and executing upon a scheme to accomplish all of the above.

Am. Compl. at ¶ 102.

Mundle has sufficiently alleged an unfair or deceptive act and satisfied the heightened pleading standard under Rule 9(b). Indeed, his allegations track with Doxo's overall scheme as described in Plaintiffs' Amended Complaint. As a result of Doxo's allegedly deceptive advertising, on three different occasions Mundle unknowingly navigated to Doxo's website while searching for his billers' websites. Id. at ¶¶ 6–8 (outlining the time, place, and content of the alleged false representations). He paid his outstanding bills through Doxo and incurred "junk fees," i.e., costs Mundle allegedly would not have incurred had he paid his billers directly.

Knight, on the other hand, alleges no contact with Doxo and has not sufficiently alleged an unfair or deceptive act as to her. According to her allegations, she unintentionally and unknowingly signed up for a subscription with Doxo. Unlike

1    Mundle's allegations, Knight's do not track Doxo's alleged "scheme" as explained in the

2    Amended Complaint.  See generally id. at ¶¶ 29–82.  Knight apparently never navigated

3    to Doxo's website; she made all of her payments telephonically.  Id. at ¶¶ 12, 18.  As a

4    result, Knight fails to identify any unfair or deceptive act.

5        Defendants rely heavily on CMRE to suggest that "the Court Previously Held that

6    Doxo's Website is Not Unfair or Deceptive."  See Mot. at 10 (docket no. 27).  Their

7    reliance is misplaced.  In CMRE, the plaintiffs sued Doxo for, among other claims, unfair

8    competition under Section 43(a) of the Lanham Act and violation of the CPA.  2022 WL

9    16701259, at *1.  Ruling on Doxo's motion to dismiss, the Court analyzed whether the

10    three factors of the nominative fair use defense were met to conclude that there was no

11    trademark infringement.  See id. at *5–9.  Factor three turns on whether Doxo's use

12    implies sponsorship or endorsement of the product by the trademark holder and a court's

13    "focus must be on the reasonably prudent consumer in the marketplace."  Id. at *8.  The

14    CMRE court could not conclude that a "reasonably prudent consumer" in the relevant

15    marketplace could have interpreted Doxo's website as being endorsed or sponsored by

16    the plaintiffs and concluded that the plaintiffs' CPA claim was based on the same alleged

17    consumer confusion and thus also failed.  Id. at *9–10.  However, the standards of and

18    elements for a CPA claim, which the CMRE court did not identify, are not the same as

19    those for a nominative fair use defense.  Additionally, unlike in CMRE, here there are

20    allegations of "actual confusion" and multiple consumers who made complaints about

21

22

23

1    Doxo.  <u>Compare</u> <u>id.</u> at *9 <u>with</u> Am. Compl. at ¶¶ 48–49, 60.  Therefore, <u>CMRE</u> is

2    distinguishable.[3]

3         Doxo's disclosures and disclaimers on its website do not defeat Plaintiffs'

4    allegations that Doxo's conduct could deceive consumers.  The screenshots of Doxo's

5    payment process show that Doxo has included disclaimers generally stating throughout

6    the payment process that it is not associated with some billers.  However, the presence of

7    the billers' logos and names also scattered throughout the website support Plaintiffs'

8    theory that consumers become confused by the allegedly conflicting information.  This is

9    sufficient at this stage in the litigation.

10        *ii.*    *Element Five: Causation*

11        Doxo argues Plaintiffs' CPA claim also fails because their allegations are

12   insufficient to establish causation.  Mot. at 16–20 (docket no. 27).  The Court disagrees as

13   to Mundle but agrees as to Knight.

14        Where a defendant has engaged in an unfair or deceptive act or practice, and there

15   has been an affirmative misrepresentation of fact, a plaintiff must demonstrate a causal

16   link between the misrepresentation and the plaintiff's injury.  <u>Indoor</u>

17

18   _____
     [3] <u>Lerner & Rowe PC v. Brown Engstrand & Shely LLC</u>, another case Defendants rely on, is also

19   distinguishable.  119 F.4th 711, 724 (9th Cir. 2024).  That case involved Lanham Act claims, including
     unfair competition, state trademark infringement and unfair competition, and an unjust enrichment claim.
     <u>Id.</u> at 717.  The district court granted summary judgment as to all claims, and the Ninth Circuit affirmed.

20   <u>Id.</u> at 717, 726.  The <u>Lerner</u> court recognized that if an "appreciable number" of people are confused, that
     fact alone might entitle the plaintiff to a trial on the likelihood of confusion.  <u>Id.</u> at 719.  It calculated the
     proportion of all consumers who were actually confused at 0.216%, concluded this standalone evidence of

21   actual confusion was de minimis, and also concluded that the calculated figure contradicted the plaintiff's
     assertions that the advertisements were likely to confuse an appreciable number of consumers.  <u>Id.</u> at 720,

22   722.  <u>Lerner</u> is distinguishable.  Here, this case does not involve Lanham Act claims and the applicable
     standards are different because before the Court is Defendants' Motion to Dismiss, not a motion for

23   summary judgment.

1   Billboard/Washington, Inc. v. Integra Telecom of Washington, Inc., 162 Wn.2d 59, 83,

2   170 P.3d 10 (2007).  Indeed, a plaintiff must establish that, but for the defendant's unfair

3   or deceptive practice, the plaintiff would not have suffered an injury.  Id.  Although

4   causation generally is a question of fact, one must nevertheless aver facts that support a

5   causal link.  Blair v. Nw. Tr. Servs., Inc., 193 Wn. App. 18, 37, 372 P.3d 127 (2016).

6   The causation requirement is met when the defendant "induced" the plaintiff to act or

7   refrain from acting.  Robinson v. Avis Rent A Car Sys., Inc., 106 Wn. App. 104, 113, 22

8   P.3d 818 (2001).

9          Mundle's allegations are sufficient to satisfy the causation standard of his CPA

10  claim and the heightened pleading standard under Rule 9(b), but Knight's are not.

11  Mundle alleged that he unknowingly navigated to Doxo's website and paid his

12  outstanding bills along with "junk fees" due to Doxo's allegedly deceptive advertising

13  and text and images on his website.  Mundle also alleged that his billers would not have

14  charged any additional fees on top of the amount stated on his bill had he paid them

15  directly.  Therefore, "but for" Doxo's unfair or deceptive practice (the allegedly

16  misleading advertising), Mundle would not have suffered an injury (paying "junk fees").

17  Without identifying an "unfair or deceptive act," Knight cannot show that "but for" that

18  practice she would not have suffered an injury.

19         Doxo's Motion to Dismiss Count 1 is DENIED as to Mundle and GRANTED

20  without prejudice as to Knight with leave to amend.

21

22

23

2.     **Plaintiffs' CPA claim against Shivers and Parks**

Shivers and Parks argue that Plaintiffs fail to make sufficient particularized

allegations against them.  Mot. at 24–26 (docket no. 27); Reply at 14–15 (docket no. 32).

The Court disagrees.

Under the CPA, "[i]f a corporate officer participates in the wrongful conduct, or

with knowledges [sic] approves of the conduct, then the officer, as well as the

corporation, is liable for the penalties."  Universal Life Church Monastery Storehouse v.

King, 2019 WL 2524993, at *2 (W.D. Wash. June 19, 2019) (quoting State v. Ralph

Williams' N. W. Chrysler Plymouth, Inc., 87 Wn.2d 298, 322, 553 P.2d 423 (1976)).

Personal liability should not be imposed upon a corporate officer unless he or she has

engaged in particularly damaging conduct.  Parkinson v. Freedom Fid. Mgmt., Inc., 2012

WL 1931233, at *12 (E.D. Wash. May 29, 2012).

To the extent they are realleged in Plaintiffs' Amended Complaint, similar

allegations asserted by the FTC against Parks are incorporated by reference from its

Order in FTC v. Doxo.  See FTC, 2025 WL 887311, at *12.  The Court summarizes the

allegations against Shivers and Parks as follows.  Shivers was aware of consumer

complaints, and Shivers "was directly informed that consumers frequently raised similar

complaints" such as "confusion with us being the biller," "late fees" and "utilities getting

turned off."  Am. Compl. at ¶ 52.  In response to an investigation into Doxo by an

attorney general's office, Shivers responded under oath that the company had received 58

complaints from state agencies regarding its practices.  Id. at ¶ 55.  In response to the

concerns raised by a search engine's employees, Shivers and Parks discussed changes

with them and "proposed that Doxo leave its ads and webpages for each biller unchanged

1    unless the biller complained to the search engine multiple times." See id. at ¶¶ 65–67.  In

2    April 2020, Shivers and Parks were informed that "65% of doxoPLUS subscribers who

3    cancelled either did not know they had a subscription or (wrongly) thought a subscription

4    was required to use Doxo." Id. at ¶ 77.  At a subsequent Board meeting, attended by

5    Shivers and Parks, Doxo set a "long-term goal to eliminate users enrolling in doxoPLUS

6    if [they] don't understand the offer," but, in the "near term," the company opted to keep

7    the enrollment flow as-is to preserve doxoPLUS subscription rates.  Id. at ¶ 78.

8        The Amended Complaint includes sufficient allegations to state a CPA claim

9    against Shivers and Parks.  What Defendants characterize as general allegations in fact

10   support Plaintiffs' theory that Shivers and Parks were aware of the precise nature of

11   consumers' confusion about Doxo's subscription services and Doxo's relationship, or

12   lack thereof, with billers.  Shivers and Parks became aware of this confusion through

13   direct consumer complaints, Doxo's internal surveys on its own customers, warnings

14   raised by attorneys' general offices, and concerns outlined by the search engine's

15   employees.  Despite being apprised of this information, Shivers and Parks directly

16   participated to maintain and further Doxo's alleged deceptive acts or practices. Those

17   actions, together with Shivers' and Parks' positions as Doxo's CEO and Vice President,

18   respectively, are sufficient at this stage of the proceedings.

19       Defendants Shivers and Parks' Motion to Dismiss Count 1 is DENIED.

20   **3.    Plaintiffs' Request for an Injunction**

21       Plaintiffs urge the Court to "issue corresponding prospective injunctive relief to

22   prevent future violations of the Washington CPA".  Am. Comp. at ¶ 122.  Such an

23   injunction would require Defendants to, among other things, "clearly disclose" on all

1    pages of the Doxo platform that it is not an official payment channel, cease to purchase

2    online advertisements that misdirect customers, "clearly disclose" all material terms of

3    paying bills through Doxo, and procure consent before charging a consumer's payment

4    method for Doxo's bill payment products or services.  Id.  Defendants argue that this

5    request for injunctive relief is moot.  Mot. at 22–23 (docket no. 27).

6         Mootness exists in the issuance of injunctions only where events make it

7    absolutely clear the allegedly wrongful behavior could not reasonably be expected to

8    recur.  State v. Ralph Williams' N. W. Chrysler Plymouth, Inc., 82 Wn.2d 265, 272, 510

9    P.2d 233 (1973).  Whether the steps taken by a defendant have since cured all alleged

10   deceptive acts or practices "is a question of fact not properly resolved on a motion to

11   dismiss."  F.T.C. v. Amazon.com, Inc., 71 F. Supp. 3d 1158, 1168 (W.D. Wash. 2014)

12   ("Even if the unlawful practices have ceased, the Ninth Circuit has established that

13   injunctive relief may still be appropriate.").

14        Accordingly, the Motion to Dismiss Plaintiffs' request for injunctive relief is

15   DENIED without prejudice.

16   **D.    Unjust Enrichment – Count 2**

17        Doxo argues that Plaintiffs fail to state a claim for unjust enrichment.  Mot. at

18   20–21 (docket no. 27).  The Court disagrees.

19        "Unjust enrichment is the method of recovery for the value of the benefit retained

20   absent any contractual relationship because notions of fairness and justice require it."

21   Young v. Young, 164 Wn.2d 477, 484, 191 P.3d 1258 (2008).  In these situations, a

22   "quasi contract" is said to exist between the parties.  Id.  The elements of a contract

23   implied in law, or unjust enrichment, are: (1) the defendant receives a benefit, (2) the

1  received benefit is at the plaintiff's expense, and (3) the circumstances make it unjust for

2  the defendant to retain the benefit without payment.  Id. at 484–85; Getzels v. Ai, 2024

3  WL 4870774, at *2 (E.D. Wash. Nov. 22, 2024).  However, when the conduct at issue in

4  the operative complaint is governed by the parties' valid express contract, a claim for

5  unjust enrichment cannot withstand a motion to dismiss.  See Storey v. Amazon.com

6  Servs. LLC, 2024 WL 2882270, at *6 (W.D. Wash. June 7, 2024).

7        First, Shivers and Parks argue that the Amended Complaint contains "*no*

8  *allegations* regarding any benefit conferred", "which alone is fatal to the unjust

9  enrichment claim against them."  Mot. at 20 (docket no. 27).  This is incorrect.  Plaintiffs

10  allege that Shivers and Parks "have received financial benefits from Doxo's deceptive

11  and unjust practices of charging Plaintiffs and Class Members unwanted fees and

12  unwanted paid subscription plans for Doxo's purported products and services."  Am.

13  Compl. at ¶ 109.  Plaintiffs also allege that Shivers and Parks "have received and retained

14  unjust benefits from Plaintiffs and Class Members for these unwanted fees and unwanted

15  paid subscription plans".  Id. at ¶ 111.

16        Second, the parties disagree as to whether a contract exists between Doxo and

17  Plaintiffs.  Based on the Amended Complaint, Doxo's subscription service sign-ups do

18  not appear to be governed by "browsewrap agreements"[4] because there are checkboxes

19  _____

20  [4] A "browsewrap agreement" is one in which a website's terms and conditions of use are generally posted
   on the website via a hyperlink at the bottom of the screen.  Nguyen v. Barnes & Noble Inc., 763 F.3d

21  1171, 1175–76 (9th Cir. 2014).  Browsewrap agreements are distinguished from "clickwrap" or "click-
   through" agreements, in which website users are required to click on an "I agree" box after being

22  presented with a list of terms and conditions of use.  Id. at 1175–76.  A "browsewrap agreement does not
   require the user to manifest assent to the terms and conditions expressly"; "a party instead gives assent
   simply by using the website."  Id. at 1176 (quoting Hines v. Overstock.com, Inc., 668 F. Supp. 2d 362,

23  366–67 (E.D. N.Y. 2009)).

ORDER - 18

1   requiring their consent to sign up.  <u>See</u> Amended Compl. at ⁋⁋ 69, 73.  Neither Plaintiff

2   alleges that the checkboxes were checked for them without their input.  However, the

3   allegations in the Amended Complaint are sufficient at this stage for both Mundle's and

4   Knight's unjust enrichment claim to demonstrate that mutual assent was lacking as a

5   result of the alleged fraud or deceit.  As to Mundle's claim, the unfair or deceptive act

6   described above constitutes the basis for the purported fraud or deceit.  As to Knight's

7   claim, although she allegedly never navigated to Doxo's website, Defendants received

8   benefits at Knight's expense and the circumstances make it unjust for Defendants to

9   retain those benefits.  <u>See</u> <u>Yakima County (W. Valley) Fire Prot. Dist. No. 12 v. City of</u>

10  <u>Yakima</u>, 122 Wn.2d 371, 389, 858 P.2d 245 (1993).  Accordingly, the presence of

11  Doxo's contracts does not defeat Plaintiffs' unjust enrichment claim on a motion to

12  dismiss.

13      Doxo next argues that Plaintiffs fail to state a claim of unjust enrichment because

14  they received value in exchange for fees.  Mot. at 20 (docket no. 27).  The Court

15  disagrees.  Doxo's argument focuses on the third element of an unjust enrichment claim.

16  The third element requires the plaintiff to allege that "the party receiving the benefit must

17  accept or retain the benefit *under circumstances that make it inequitable for the receiving*

18  *party to retain the benefit* without paying its value."  <u>Alvarado v. Microsoft Corp.</u>, 2010

19  WL 715455, at *4 (W.D. Wash. Feb. 22, 2010) (emphasis added) (quoting <u>Cox v.</u>

20  <u>O'Brien</u>, 150 Wn. App. 24, 37, 206 P.3d 682 (2009)).  Doxo agreed to pay outstanding

21  bills by writing and mailing checks to Mundle's billers in exchange for a fee.  But

22  Mundle allegedly unknowingly and unintentionally signed up for Doxo's service due to

23  Doxo's deceptive acts or practices.  Doxo's retention of Mundle's payment in light of

ORDER - 19

1    these circumstances would be inequitable.  Knight allegedly paid her bills directly to

2    Seventh Avenue over the phone using her debit card without ever navigating to Doxo's

3    website or otherwise contacting Doxo.  Am. Compl. at ¶¶ 11–12.  She received no value

4    in exchange for paying Doxo by apparently unknowingly and unintentionally signing up

5    for one of Doxo's subscription services.  <u>See</u> <u>id.</u> at ¶¶ 17, 19–21.  The Amended

6    Complaint contains sufficient allegations to state a plausible unjust enrichment claim for

7    both Plaintiffs against all Defendants.

8          Defendants' Motion to Dismiss Count 2 is DENIED.

9    **E.      <u>Declaratory Relief – Count 3</u>**

10          Plaintiffs ask the Court to "enter a judgment declaring Plaintiffs' rights and legal

11   relations under the Washington CPA" "to prevent future violations of the CPA."  Am.

12   Compl. at ¶ 120; <u>see</u> Opp. at 29 (docket no. 30).  Defendants argue that Plaintiffs failed to

13   state a claim for declaratory relief under the Declaratory Judgment Act.  Mot. at 22

14   (docket no. 27).

15          Under the Declaratory Judgment Act, a federal court "may declare the rights and

16   other legal relations of any interested party seeking such declaration".  28 U.S.C. § 2201.

17   The availability of relief under the Declaratory Judgment Act "presupposes the existence

18   of a judicially remediable right."  <u>City of Reno v. Netflix, Inc.</u>, 52 F.4th 874, 878 (9th

19   Cir. 2022) (quoting <u>Schilling v. Rogers</u>, 363 U.S. 666, 677 (1960)).  Therefore, the

20   Declaratory Judgment Act does not provide an affirmative cause of action where none

21   otherwise exists.  <u>Id.</u>  A claim under the Declaratory Judgment Act is subject to the

22   pleadings requirements of Rule 8(a).  <u>See</u> <u>Doe v. United States Ctr. for SafeSport, Inc.</u>,

23   2024 WL 3924663, at *9 (W.D. Wash. Aug. 23, 2024).

1    Although Plaintiffs' request for injunctive relief is located under the header for

2    Count 3, it is pled as separate from the relief sought under the Declaratory Judgment Act.

3    See Am. Compl. at ¶ 122 ("The Court should *also* issue corresponding prospective

4    injunctive relief to prevent future violations of the Washington CPA." (emphasis added)).

5        As the Court concluded above, the CPA claim remains for Mundle and the unjust

6    enrichment claim remains for Mundle and Knight.  Thus, for both individual Plaintiffs

7    there exists an independent affirmative cause of action.  The judgment Plaintiffs seek

8    declaring their rights and legal relations under the CPA relates to the protection Plaintiffs

9    and other consumers are afforded under the CPA from Doxo's statements that "have a

10   tendency to mislead and deceive members of the Class."  See id. at ¶ 118.

11       Defendants' Motion to Dismiss Count 3 is DENIED as to all Defendants.

12   **Conclusion**

13       For the foregoing reasons, the Court ORDERS:

14       (1)    Defendants' Motion to Dismiss, docket no. 27, is GRANTED in part and

15   DENIED in part as follows.[5]  The Motion is DENIED as to Mundle's CPA claim (Count

16   1) against all Defendants and GRANTED without prejudice as to Knight's CPA claim

17   (Count 1) against all Defendants.  Defendants' Motion to Dismiss Count 2 and Count 3 is

18   DENIED.

19

20

21   [5] Defendants also contend that the Amended Complaint must be dismissed because its claims are time-barred in part.  Mot. at 23 (docket no. 27).  A complaint cannot be dismissed unless it appears beyond

22   doubt that the plaintiff can prove no set of facts that would establish the timeliness of the claim. Supermail Cargo, Inc. v. United States, 68 F.3d 1204, 1207 (9th Cir. 1995).  Because Plaintiffs' Amended Complaint is not time-barred on its face, it is premature to evaluate Plaintiffs' argument that the discovery

23   rule tolls Plaintiffs' claims.  See Shared P'ship v. Meta Platforms, Inc., 2024 WL 4280936, at *4 (N.D. Cal. Sept. 23, 2024).

ORDER - 21

(2)     The parties shall file a joint status report on or before April 30, 2025, that addresses the parties' proposed trial date and related pretrial deadlines.  See Joint Status Report (docket no. 34).

(3)     The stay of discovery imposed in the Court's prior Minute Order, docket no. 43, is hereby LIFTED.

(4)     The Clerk is directed to send a copy of this Order to all counsel of record.

IT IS SO ORDERED.

Dated this 16th day of April, 2025.

Thomas S. Zilly
United States District Judge

ORDER - 22