UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT SEATTLE

DOUGLAS MUNDLE and PAMELA KNIGHT, individually and on behalf of all persons similarly situated,

Plaintiffs,

v.

DOXO, INC., a corporation; STEVEN SHIVERS, individually and as an officer of DOXO, INC.; and ROGER PARKS, individually and as an officer of DOXO, INC.,

Defendants.

C24-0893 TSZ

ORDER

THIS MATTER comes before the Court on Defendants' Motion to Compel Arbitration and Motion to Stay (the "Motion"), docket no. 48. Having reviewed all papers filed in support of, and in opposition to, the Motion, the Court enters the following order.

**Background**

The Court previously provided a detailed description of the allegations in this case. See Order at 1–6 (docket no. 44). The Court provides the following summary of additional information that is relevant to the pending motion.

ORDER - 1

Doxo's Terms of Service that have been in effect since April 1, 2020, state, in relevant part:

> Please read these User Terms of Service ("Terms") carefully. If you use or access doxo, Inc. or our affiliates ("doxo" or "we" or "us") services, products, or websites ("doxo Services"), you agree to be bound by these Terms. If you do not agree to these Terms, do not use the doxo Services. We may update or modify these Terms from time to time and will post them and update the date. By accessing or using the doxo Services thereafter, you agree to be bound by such updated Terms. If you do not agree, you should not continue to use the doxo Services.

Ex. G to Shivers Decl. (docket no. 28 at 44). Amendments to the Terms of Service were made effective on June 13, 2022 and on May 6, 2024, but the language above remained unchanged. See Exs. H & I to Shivers Decl. (docket no. 28 at 53 & 62). The Terms of Service were amended again on May 9, 2024, and the following language (the "Arbitration Provision") was added, which states in relevant part:

> ANY CONTROVERSY, DISPUTE OR CLAIM ARISING OUT OF OR RELATING IN ANY WAY TO YOUR USE OF ANY DOXO SERVICES WILL BE RESOLVED BY BINDING ARBITRATION, RATHER THAN IN COURT, EXCEPT THAT YOU MAY ASSERT CLAIMS IN SMALL CLAIMS COURT IF YOUR CLAIMS QUALIFY. THE FEDERAL ARBITRATION ACT AND FEDERAL ARBITRATION LAW APPLY TO THESE TERMS, AND THESE PROVISIONS REGARDING ARBITRATION RETROACTIVELY.

Ex. J to Shivers Decl. (docket no. 28 at 80).

Plaintiff Douglas Mundle appears to have created two Doxo accounts: the "a98e Account" and the "b54f Account." Shivers Decl. at ¶¶ 6 & 41 (docket no. 50). The a98e Account was created on May 11, 2021, with user email address buddhascuda@aol.com, and account holder name "Douglas Mundle" or alternatively, "Douglas W Mundle." Id. at ¶ 6. The last payment associated with the a98e Account was on June 9, 2024. Id. at ¶ 10. Two days later, the a98e Account was sent an email notifying the account of an

ORDER - 2

1  update to the Terms of Service.  Id. at ¶ 9.  The following image is a screenshot of that

2  email:



14  Id. at ¶ 9.  The "Iterable email platform"[1] allegedly shows that the email was opened on

15  June 12, 2024.  Id.  A day later, payment cards were removed from the a98e Account and

16  the a98e Account was canceled.  Id. at ¶ 11.

17       The b54f Account was created on June 20, 2024, with the user email address

18  "buddhascuda@gmail.com" and the same zip code that was used to create the a98e

19  Account.  Id. at ¶ 41.  The user of the b54f Account visited the mobile Doxo application

20  page on August 21, 2024, but did not log in.  Id. at ¶ 42.  No information about the status

---

[1] Shivers does not explain what this platform is, or how the platform showed that the email was opened.

ORDER - 3

of the b54f Account, namely whether it is still open or has since been closed, has been provided to the Court.  See id. at ¶ 41–42.  However, Defendants do not contend the account was used after August 21, 2024.  See id. at ¶ 42.

Mundle claims he "never knowingly created a separate Doxo account beyond the steps that were required to pay my bills through what I thought was the authorized payment portal for my billers."  Mundle Decl. at ¶ 7 (docket no. 54).  In reviewing Shivers' declaration and the processed payments associated with the a98e Account, Mundle states that he "did not knowingly pay a bill [to Quest Diagnostics] on [May 11, 2021] through Doxo," but he "recall[ed] paying a bill from the NY State Thruway via Doxo in approximately 2021, which may instead have been around the time Mr. Shivers indicates," and "confirm[ed] that the [Connecticut Orthopedics] bill was paid by me [via] Doxo on May 7, 2021."  Id. at ¶¶ 10, 12, 15.  Mundle states he does not recall ever completing a sign-in process to create a Doxo account independent of the process that he was required to complete to pay his bills and never accepted any terms of service from Doxo in connection with making the payments indicated above.  Id. at ¶¶ 16–17.  Mundle contends that no arbitration clause was presented to him to review when he made the payments through Doxo, and he does not recall receiving or reading any email from Doxo containing an amendment to any terms of service that added an arbitration agreement.  Id. at ¶¶ 18–19.

Defendants claim that Plaintiff Pamela Knight appears to have created one Doxo account: the "bb5f5 Account."  Shivers Decl. at ¶ 12 (docket no. 50).  This account was created on February 14, 2024, with a user email address "pamelaknight78@gmail.com"

ORDER - 4

1   and the account holder name was listed as "Pamela K Knight."  Id.  The bb5f5 Account
2   was used to pay Seventh Avenue Credit on February 14, 2024, March 9, 2024, April 3,
3   2024, and May 6, 2024.  Id. at ¶¶ 13–14, 16–17.  On June 14, 2024, the bb5f5 Account
4   was sent an email notifying the account of an update to Doxo's Terms of Service.  Id. at
5   ¶ 18.  The email sent was identical to the email sent to the a98e Account.  Compare id. at
6   ¶ 18 with id. at ¶ 9.  The "Iterable email platform" allegedly shows that the email was
7   clicked on and opened on June 15, 2024.  Id. at ¶ 18.  On July 4, 2024, the bb5f5 Account
8   made a payment to Seventh Avenue Credit.  Id. at ¶ 19.  The bb5f5 Account has remained
9   open as of April 22, 2025.  Id. at ¶ 22.

      Knight claims she "never created a separate Doxo account."  Knight Decl. at ¶ 7 (docket no. 53).  When she "called Seventh Avenue to make a transaction to purchase a small kitchen appliance in February 2024," she never thought she was transacting with Doxo, never navigated to the Doxo website to make payments to Seventh Avenue, and never accepted any terms from Doxo before finalizing her payments with Seventh Avenue.  Id. at ¶¶ 9–12.  Knight denies being presented with an arbitration clause to review when she made her February 2024 purchase and does not recall "ever receiving, opening, or reading anything about a Doxo arbitration agreement."  Id. at ¶¶ 13–14.

**Discussion**

A.  **Agreement to Arbitrate**

      In deciding whether to compel arbitration, the Court first looks at whether there exists between the parties an enforceable agreement to arbitrate.  Since the Arbitration Provision was added to Doxo's Terms of Service after the a98e Account and bb5f5

ORDER - 5

Account were created, the Court will then look at whether Plaintiffs manifested assent to the addition of the Arbitration Provision to Doxo's Terms of Service.

### 1. Standard of review and preliminary matters

An order granting a motion to compel arbitration "is in effect a summary disposition of the issue of whether or not there had been a meeting of the minds on the agreement to arbitrate," so courts apply the summary judgment standard when evaluating such a motion. See Hansen v. LMB Mortg. Serv., Inc., 1 F.4th 667, 670 (9th Cir. 2021). Any doubt is therefore resolved in favor of the nonmoving party. Kuhk v. Playstudios Inc., 2024 WL 4529263, at *2 (W.D. Wash. Oct. 18, 2024). The party seeking to compel arbitration bears "the burden of proving the existence of an agreement to arbitrate by a preponderance of the evidence." See Norcia v. Samsung Telecommunications Am., LLC, 845 F.3d 1279, 1283 (9th Cir. 2017) (quoting Knutson v. Sirius XM Radio Inc., 771 F.3d 559, 565 (9th Cir. 2014)).

The Court's role under the Federal Arbitration Act ("FAA") is limited to determining: (1) whether a valid agreement to arbitrate exists and, if it does, (2) whether the agreement encompasses the dispute at issue. Chiron Corp. v. Ortho Diagnostic Sys., Inc., 207 F.3d 1126, 1130 (9th Cir. 2000) (citing 9 U.S.C. § 4). The parties only contest the first issue. In determining whether parties have agreed to arbitrate a dispute, the Court applies "general state-law principles of contract interpretation, while giving due regard to the federal policy in favor of arbitration by resolving ambiguities as to the scope of arbitration in favor of arbitration." Mundi v. Union Sec. Life Ins. Co., 555 F.3d 1042, 1044 (9th Cir. 2009). In this case, the parties agree that Washington law applies. See

1 Mot. to Compel Arbitration at 6 n.6 (docket no. 48); Opp. at 7 (docket no. 51). In

2 Washington, contract formation requires mutual assent. Reichert v. Rapid Invs., Inc., 56

3 F.4th 1220, 1227 (9th Cir. 2022) (applying Washington law). Parties may not shirk

4 contract obligations if they have actual or constructive notice[2] of the provisions. Wilson

5 v. Huuuge, Inc., 944 F.3d 1212, 1219 (9th Cir. 2019) (applying Washington law). In the

6 context of online agreements, the existence of mutual assent turns on whether the

7 consumer had reasonable notice of the terms of service agreement. Id.

8     Plaintiffs argue that they never agreed to the original Doxo Terms of Service

9 contract that preceded the Arbitration Provision addition and therefore cannot be found to

10 have agreed to arbitrate their claims against Defendants. See Opp. at 13 (docket no. 51).

11 Plaintiffs attempt to cast doubt on the information contained in the Shivers Declaration

12 because Defendants "fail[ed] to present any direct evidence that Plaintiffs agreed to the

13 [Terms of Service]," noting that "[t]here are no signatures of Plaintiffs, or initials, or even

14 evidence that any box was checked or linked page reviewed." Id.

15     By now, Plaintiffs Mundle and Knight are aware that they created Doxo accounts,

16 even if ultimately it was unintentional. Rather than outright disclaim the accuracy of

17 Defendants' claims that the three accounts identified in the Shivers Declaration were

---

[2] The Court concludes that actual notice is not at issue in this case. Defendants do not claim that Plaintiffs in fact viewed the Terms of Service, only that they were presented with hyperlinks to the Terms of Service at several times throughout the Doxo account creation process. See Mot. to Compel Arbitration at 7–10 (docket no. 48). Defendants have not presented any evidence of Mundle or Knight's actual knowledge. See Wilson v. Huuuge, Inc., 944 F.3d 1212, 1219–20 (9th Cir. 2019) (agreeing with the district court's conclusion that the defendant did not present any evidence of the plaintiff's actual knowledge and determination that actual notice was not at issue when denying defendant's motion to compel arbitration).

ORDER - 7

1  associated with Plaintiffs or otherwise submit evidence in opposition of that position,

2  Plaintiffs argue merely that Defendants "offer hedging language" that the a98e Account

3  "appears to be Plaintiff Mundle's" and also "offer no definitive evidence that Plaintiff

4  Knight signed up for a Doxo account." Opp. at 2–3 (docket no. 51).  Plaintiffs note that

5  Defendants have not offered screenshots of business records indicating that they

6  navigated to Doxo's sign-up page, signed up for an account, and assented to Doxo's

7  Terms of Service.  Id. at 3.  These arguments fail to create a material issue of fact as to

8  whether Plaintiffs created Doxo accounts, and Plaintiffs cite no authority that would

9  suggest that Defendants must provide such evidence for the purposes of satisfying their

10 burden on a motion to compel arbitration.

11            **2.       Whether a valid agreement to arbitrate exists**

12            The Court now determines whether either Plaintiff received constructive notice of

13 the provisions contained in the Terms of Service.  See Wilson, 944 F.3d at 1219.  The

14 parties appear to agree, and the Court independently concludes, that Doxo's Terms of

15 Service contract is properly construed as a sign-in wrap agreement.  A sign-in wrap

16 agreement may be an enforceable contract based on inquiry notice if (1) the website

17 provides reasonably conspicuous notice of the terms to which the consumer will be

18 bound, and (2) the consumer takes some action, such as clicking a button or checking a

19 box, that unambiguously manifests his or her assent to those terms.  Grant v. T-Mobile

20 USA, Inc., 2024 WL 3510937, at *4 (W.D. Wash. July 23, 2024) (applying Washington

21 law).  Plaintiffs contend neither requirement is satisfied.

22

23

ORDER - 8

1    Plaintiffs argue Doxo's website failed to provide conspicuous notice of the Terms
2 of Service because the terms are represented in a blue font smaller than the font on the
3 rest of the page.  Opp. at 14 (docket no. 51).  Plaintiffs refer to the following image:



17 Shivers Decl. at ¶ 24 (docket no. 50).  To determine whether a website provides
18 reasonably conspicuous notice, courts consider, among other things, "the transactional
19 context, the notice's size relative to other text on the site, the notice's proximity to the
20 relevant button or box the user must click to complete the transaction or register for the
21 service, and whether the notice's hyperlinks are readily identifiable." Kuhk, 2024 WL
22 4529263, at *5.  While it is permissible to disclose terms and conditions through a
23

ORDER - 9

hyperlink, "the fact that a hyperlink is present must be readily apparent. Simply underscoring words or phrases . . . will often by insufficient to alert a reasonably prudent user that a clickable links exists . . . . Customary design elements denoting the existence of a hyperlink include the use of a contrasting font color (typically blue) and the use of all capital letters, both of which can alert a user that the particular text differs from other plain text in that it provides a clickable pathway to another webpage." Id.

For the purposes of this Motion only, the Court concludes that the sign-in wrap notice was conspicuous. While the hyperlink to the Terms of Service in the image above is not underlined or in all capital letters, the blue, unfaded font color along contrasted against a white background appears to be sufficient to give notice that users could indeed click on "Terms of Service" and be directed to its provisions. The font size is smaller than the "Create your Account" text in the button that follows the notice, but not so much as to render it "barely legible to the naked eye." Berman v. Freedom Fin. Network, LLC, 30 F.4th 849, 856 (9th Cir. 2022).

The Court addresses the second requirement, whether the consumer takes some action, such as clicking a button or checking a box, that unambiguously manifests his or her assent to those terms, as to each Plaintiff separately. The Court then determines whether Mundle and Knight assented to the inclusion of the Arbitration Provision.

   *i.* *Plaintiff Mundle*

Although Mundle created a Doxo account and thereby agreed to Doxo's original Terms of Service, the Court concludes that Defendants have not demonstrated that Mundle also agreed to or is bound by the later-added Arbitration Provision.

ORDER - 10

Mundle never intended to create a separate Doxo account beyond the steps required to pay his bills and believed Doxo was "the authorized payment portal" for his billers. Mundle Decl. at ¶ 7 (docket no. 54). Nevertheless, it is undisputed that Mundle did in fact create a Doxo account to pay outstanding bills and thereby clicked the buttons or checkboxes during the payment process to create his account. For the purposes of this Motion only, the Court concludes that Mundle was bound by the Terms of Service that were in effect when he created his Doxo account.

Nevertheless, Defendants have failed to satisfy their burden as to the existence of an agreement to arbitrate between Doxo and Mundle. The only action taken on the a98e Account after Doxo sent the email with notice of the Arbitration Provision was to remove payment cards and deactivate the account. These actions dissociate the a98e Account with Doxo and adhere fully to the Terms of Service language stating, "If you do not agree to these Terms, do not use the doxo Services." As for the b54f Account, it was created on June 20, 2024, after notice of the Arbitration Provision was sent to the a98e Account on June 11, 2024. Though there would presumably be a name associated with the b54f Account on file with Doxo, Shivers notes only the associated email address, which is different than the email address associated with the a98e Account, and zip code, which matches the zip code associated with the a98e Account. The zip code in common alone, however, is insufficient to associate the b54f Account with Mundle. In addition, no payments were made, and no payment card information was uploaded onto the account. No information has been provided as to the status of the b54f Account at the time Defendants filed their pending motion.

ORDER - 11

1    Defendants have not shown by a preponderance of the evidence that there existed
2 an arbitration agreement between Doxo and Mundle.  Defendants Motion to Compel
3 Arbitration and Motion to Stay is therefore DENIED as to Mundle.

4    *ii.    Plaintiff Knight*

5    The Court concludes that for the purposes of this Motion only, Knight created a
6 Doxo account, is bound by Doxo's Terms of Service that were in effect at the time she
7 signed up for a Doxo account, and is bound by the Arbitration Provision.

8    Knight claims she is not bound by Doxo's original Terms of Service because she
9 never navigated to the Doxo website to make payments to Seventh Avenue; she made
10 payments only over the phone. See Knight Decl. at ¶¶ 9, 11–12 (docket no. 53).
11 Conversely, Defendants contend that Seventh Avenue Credit can be paid through Doxo
12 only using the Doxo website or the mobile application; it cannot be paid through Doxo
13 over the phone. See Shivers Decl. at ¶ 13 (docket no. 50).  Knight does not dispute that
14 payments through Doxo cannot be made over the phone, and as noted above, does not
15 dispute that the bb5f5 Account is not hers based on the email address, name, and zip code
16 on file with Doxo.  Accordingly, the Court concludes that Knight accepted the original
17 terms of the Terms of Service.

18    As to the Arbitration Provision itself, Knight, unlike Mundle, apparently made
19 another payment online using the bb5f5 Account after being sent the email notifying her
20 of the amendment to Doxo's Terms of Service.  This manifests clear assent to the
21 amendment to the Terms of Service, by "continu[ing] to use the doxo Services." Ex. G to
22 Shivers Decl. (docket no. 28 at 44).

23

ORDER - 12

B.  **Waiver of Arbitration**

The Court turns next to whether Defendants have waived their right to arbitrate. Plaintiffs contend Defendants did so "by electing to litigate this action in federal court for the past year and only raising the specter of arbitration after the Court declined to grant their motion to dismiss." Opp. at 7 (docket no. 51). The Court agrees.

The party asserting waiver must demonstrate: (1) knowledge of an existing right to compel arbitration, and (2) intentional acts inconsistent with that existing right. Armstrong v. Michaels Stores, Inc., 59 F.4th 1011, 1015 (9th Cir. 2023).[3] Courts look to the totality of the parties' actions when assessing whether the party moving to compel arbitration took acts inconsistent with their right to arbitration. Id. Courts ask whether those actions holistically "indicate a conscious decision . . . to seek judicial judgment on the merits of the arbitrable claims, which would be inconsistent with a right to arbitrate." Id. (quoting Hill v. Xerox Bus. Servs., LLC, 59 F.4th 457, 474 n.19 (9th Cir. 2023)). The party opposing arbitration bears the burden of showing waiver. Id. at 1014.

1.  **Knowledge of an existing right to compel arbitration**

Plaintiffs argue the first element is met because Doxo's purported amendment to its Terms of Service that added the Arbitration Provision was drafted by Doxo

---

[3] In Morgan v. Sundance, Inc., 596 U.S. 411, 414 (2022), the United States Supreme Court held that "prejudice is not a condition of finding that a party, by litigating too long, waived its right to stay litigation or compel arbitration under the Federal Arbitration Act." The Ninth Circuit has since confirmed that "Morgan abrogates our precedents to the extent they required the party opposing arbitration to demonstrate prejudice." Armstrong, 59 F.4th at 1015. Plaintiffs, however, still argue that "compelled arbitration at this stage of the case would prejudice Plaintiffs." Opp. at 11–12 (docket no. 51). Plaintiffs fail to cite any authority that explains how or even if the Court should weigh this argument into its assessment of waiver. The Court declines to do so.

ORDER - 13

themselves. Opp. at 8 (docket no. 51). Defendants do not appear to challenge this assertion. See generally Reply at 1–4 (docket no. 55). The Court concludes that Defendants knew of their claim of a right to compel arbitration by creating the relevant arbitration clause and inserting it into their Terms of Service in May 2024, nearly a month before Plaintiffs filed this lawsuit.

### 2. Intentional acts inconsistent with that existing right

As to the second element, Plaintiffs claim Defendants acted inconsistently with their right to arbitration by (1) actively litigating this case for nearly a year to take advantage of this forum by seeking a merits ruling in their motion to dismiss, and (2) intentionally deciding not to move to compel arbitration by choosing to litigate this action for nearly a year with no mention of arbitration before filing their motion. Opp. at 9–11 (docket no. 51). The Court agrees.

For the first nearly ten months of this case, despite filing numerous pleadings with the Court, Defendants failed to mention any potential enforceable right to compel arbitration. Mundle filed this lawsuit on June 21, 2024. See Compl. (docket no. 1). On August 30, 2024, Defendants filed a motion to dismiss with prejudice the entirety of Mundle's complaint. See Mot. to Dismiss at 2 & 24 (docket no. 14). The parties signed a stipulated notice, docket no. 20, to extend the response and reply brief deadlines, which the Court adopted by docket entry on September 6, 2024. On September 20, 2024, the Court granted Mundle's stipulated motion for extension of responsive pleading deadlines, docket no. 22, and set deadlines for Mundle to file an amended complaint and Defendants to file a renewed motion to dismiss an amended complaint. Minute Order (docket no.

23).  On September 30, 2024, Mundle filed an Amended Class Action Complaint, docket no. 25, which added Knight as a plaintiff to the lawsuit.  On October 9, 2024, the Court granted the parties' requests to extend the time to file a joint status report.  Minute Order (docket no. 26).  Defendants filed their renewed motion to dismiss, docket no. 27, on November 6, 2024.  On January 17, 2025, the parties filed their Joint Status Report and Discovery Plan, docket no. 34.  On February 7, 2025, the parties filed a stipulated protective order, docket no. 40, and a stipulated agreement regarding the discovery of electronically stored information, docket no. 41.  The Court adopted both stipulations and stayed discovery pending resolution of Defendants' motion to dismiss.  Minute Order (docket no. 43).  On April 16, 2025, the Court entered an Order on Defendants' motion to dismiss and required the parties to file a joint status report with new proposed dates for a scheduling order.  Order at 22 (docket no. 44).[4]

On April 30, 2025, for the first time in the case, Defendants indicated in two separate filings that Plaintiffs' claims are subject to arbitration.  Defendants filed their Answer to the Amended Complaint, where they asserted "Agreement to Arbitrate" as a defense.  Answer at 20–21 (docket no. 45).  In the parties' Updated Joint Status Report and Discovery Plan, Defendants stated they would file a motion to compel arbitration.  Joint Status Report at 2–5, 8–9 (docket no. 46).

---

[4] The Court's Order consisting of 22 pages involved substantial judicial resources determining the merits of the underlying claim.

ORDER - 15

      The following two cases are factually similar to this case. In <u>Gile v. Dolgen California, LLC</u>,[5] the Ninth Circuit affirmed the district court's order denying the defendant's motion to compel arbitration and stay proceedings. 2022 WL 17248087, at *1 (9th Cir. Nov. 28, 2022). The defendant filed its motion to compel over eleven months after it removed the case to federal court, had previously filed two motions to dismiss based largely on arguments to the merits of plaintiffs' claims, had met and conferred with plaintiffs' counsel six times prior to filing additional motions to dismiss, and stipulated five times to plaintiffs filing amended complaints over the course of many months. <u>Id.</u> The <u>Gile</u> court concluded that the defendant's "extended silence and delay" in moving for arbitration indicated a conscious decision to continue to seek judicial judgment on the merits of the arbitrable claims. <u>Id.</u> at *2.

      Similarly, in <u>Martin v. Yasuda</u>, the Ninth Circuit held that in light of the totality of the defendants' actions, the defendants had engaged in conduct inconsistent with their right to arbitrate by spending seventeen months litigating the case, including devoting "considerable time and effort" to a joint stipulation structuring the litigation, filing a motion to dismiss on a key merits issue, entering into a protective order, answering discovery, and preparing for and conducting a deposition. 829 F.3d 1118, 1126 (9th Cir. 2016). The defendants did not note their right to arbitration until "almost a year into the litigation" and did not move to enforce that right until "well after that time." <u>Id.</u>

---

[5] Although unpublished dispositions of the Ninth Circuit are generally not precedent, they may be cited as persuasive authority if issued on or after January 1, 2007. <u>See</u> Ninth Circuit Rule 36-3(a)–(b); FRAP 32.1(a); <u>Massachusetts Bay Ins. Co. v. Walflor Indus., Inc.</u>, 383 F. Supp. 3d 1148, 1159 n.5 (W.D. Wash. 2019). The Court cites <u>Gile</u> as persuasive authority.

ORDER - 16

In this case, Defendants filed two motions to dismiss Plaintiffs' complaints, both of which sought full dismissal. Defendants stipulated to extend the briefing deadlines for the first motion to dismiss, extend the deadline to file the first joint status report, extend the deadline for Plaintiffs to file their amended complaint, and extend the deadline for initial disclosures under Federal Rule of Civil Procedure 26(f). Defendants also stipulated to a protective order and an agreement concerning the discovery of electronically stored information. Only after the Court entered an Order denying most of Defendants' second motion to dismiss did Defendants then seek to compel both Plaintiffs to arbitrate all of their claims. After considering the totality of the parties' actions, the Court concludes, as did the Gile and Martin courts, that Defendants' extended silence and delay in moving for arbitration constitutes a waiver of any right to compel arbitration.

Accordingly, Defendants have waived any right to arbitrate Plaintiffs' claims.

**Conclusion**

For the foregoing reasons, the Court ORDERS:

(1) Defendants' Motion to Compel Arbitration and Motion to Stay, docket no. 48, is DENIED.

(2) The Clerk is directed to send a copy of this Order to all counsel of record.

IT IS SO ORDERED.

Dated this 7th day of August, 2025.

Thomas S. Zilly
United States District Judge

ORDER - 17